et al., oral argument, 15 minutes per side. Mr. Horwitz, for the appellants. Good afternoon, Your Honors. May it please the Court, Daniel Horwitz of the Nashville Bar on behalf of the plaintiff's appellants in this matter. With the Court's permission, I would like to reserve four minutes for rebuttal, please. You may, and you may proceed. Thank you, Your Honor. Your Honors, this is a case about an inmate sterilization program in White County, Tennessee, that facially discriminates on the basis of both gender and the exercise of a fundamental right. But this appeal turns primarily on one issue. Can this Court reach the merits of the plaintiff's claims? If it can, Your Honors, then I respectfully submit that this is one of the simplest cases that this Court will ever decide, and the reason for that is straightforward. As mentioned, the challenged inmate sterilization program facially discriminates on the basis of both gender and the exercise of a fundamental right. Both of those defects independently raise the standard of constitutional scrutiny in this case, but more importantly, they shifted the evidentiary burden of proving the program's constitutionality to the defendants. In response to a dispositive motion for summary judgment as to both issues, however, the defendants failed to muster any proof whatsoever, not a single affidavit or exhibit, to meet their burden of proof in this case. As a consequence, Your Honors, if this Court reaches the merits of this case, then there is only one possible outcome here. This Court should conclude that the defendants failed to meet their burden of proof, summary judgment should be entered in the plaintiff's favor, and the district court's order should be reversed. Hence, the central question in this case. What relief would you want? Your Honors, we have asked for either of two forms of relief, or both, in addition to an injunction in this matter. An injunction against what? An injunction against the ongoing disbursement of sentencing credits within White County based solely on the exercise of the fundamental right to procreate. With respect to the equal protection claims, though, there are two possible remedies, either to declare the program a nullity and withdraw the benefits from the favored class, or else to provide the credit in this case, the benefit, to the plaintiffs. Either one of those forms of relief is available when an equal protection claim is stated. The plaintiffs have asked for either or both. Would it make, is another option to remand the case to the district court? Didn't the plaintiffs move to not decide the case on the merits, arguably? That's correct, Your Honor. One possibility would be to remand it, if appropriate. That is an option that's available to this court, but as noted, Your Honor, there was a dispositive motion for summary judgment pending that was fully briefed. There is simply nothing else to decide other than whether they met their burden of proof in this case, and there was no evidence, not at all. Not a single affidavit or exhibit was submitted by the defendants to overcome the presumptive unconstitutionality of this inmate sterilization program. Yeah, but is that as to the declaratory relief that's requested, but not as to the injunctive relief? That is solely as to the declaratory. So we would, what would you propose we do as to the injunctive relief? Your Honor, the injunctive relief that we've asked for suffers from this, or the defendant's position on the matter suffers from the same problem, which is, if they are going to be stopped, if they are claiming voluntary secession, they had the burden of proving that it is not possible, or not likely at least, that this program was going to happen again in the future. And again, there was no evidence whatsoever, not a single affidavit or exhibit submitted to the district court after full briefing to overcome, to meet that burden. As a result, we, I Well, there's a statute now that's out. Isn't that enough? Your Honor, that is the primary basis that the district court used to find this case was moot. Respectfully, though, the statute that was passed in this case has nothing to do with the relief that the plaintiffs are seeking. It has no bearing whatsoever Where is the likelihood of harm to your clients? If what, Your Honor? Where is the likelihood of harm to your clients, which is an element of an injunct relief? Your Honor, so as noted, the equal protection claim that's stated, the injury with respect to an equal protection claim, is the denial of equal treatment, not the ultimate ability to obtain a benefit. This program remains ongoing to the extent that sentencing credits are still being dispersed based exclusively on inmates' decision to forego a fundamental right. When you say they're still being dispersed, I thought this was a one-time thing that happened so people either did or did not get the sentencing credits. Your Honor, to provide some context on this, there was initially an order that provided that inmates who came to the court and agreed to be sterilized would get this 30-day sentence credit. There was a bit of a national outcry a couple of months later. There was a second order that came down. It said we are no longer doing this going forward, but any inmate who becomes sterilized can still come back to the court and get a sentencing credit. And so hasn't that happened already? In November of 2017, there was an order making clear that this is still available to any inmate who wants to come back to the court and say, I got sterilized or I agreed to be sterilized. The sentencing credits are still available and being dispersed pursuant to that order. So you say being dispersed. Do you have evidence showing that people are still getting new sentencing credits because of that? What we've submitted, Your Honor, is a live order that is admittedly still active, signed by the defendant judge in this matter, that says, to clarify, these credits are still available to any inmate who either got sterilized or agreed to become sterilized previously. As to the statute, it only applies prospectively, Your Honor. It came into effect in May of 2018. The language of that statute makes very clear that it takes effect on the date that it became a law and that it does not apply retrospectively. As a result, there is... In a broad conceptual way, how does this differ in a certain respect from any plea case? You have to give up a constitutional right to get a lesser sentence. And if your co-defendant doesn't want to give up his constitutional right, he faces maybe a stiffer sentence. Let me answer that question in two separate ways, Your Honor. The first answer is that pleas have some at least plausible connection to the criminal justice system. Getting inmates sterilized, there is no tight fit whatsoever. There is no tailoring, no narrow tailoring at all with respect to this inmate sterilization program. But acceptance of responsibility in the context of a criminal plea agreement is part and parcel of the criminal justice system, not so with sterilization. More importantly, though, in a typical case, Your Honor, I understand that there might be some degree of difference or some line drawing available as to whether a program is coercive or not. This court doesn't even have to make this decision in this case, Your Honor, because pursuant to a public reprimand related to this program, the judge already acknowledged that this program was unduly coercive and that it was improper as a result. I think regardless of where any jurist believes the line should be drawn, unduly coercing sterilization... Taxi Bob might have the reputation of being unduly coercive, too. Fair enough, Your Honor. Nonetheless, I don't believe that there is any reasonable claim to be made that sterilizing inmates bears any plausible connection to any government interest. Certainly not a compelling one, and as a result, this program fails under both strict scrutiny... Well, it certainly requires the defendant to give up constitutional rights. That's correct, Your Honor, and as a result, it shifted the burden in this case. Gender discrimination and discrimination on the basis of a fundamental right, that burden shifted. Now, I'm not saying it is impossible to meet that burden, although I think it would be very, very difficult to do so. Nonetheless, it was the defendant's obligation in this case to prove that there was a compelling interest involved with respect to its fundamental rights-based discrimination, to prove that there was some exceedingly persuasive justification for this program with respect to its gender-based discrimination, and to prove that there was sufficient narrow tailoring to demonstrate the program's constitutionality and to overcome its presumed unconstitutionality. Are you asking for, as part of your relief, for sentencing credits to be given to your clients? Yes, Your Honor, but we have asked for either equal protection remedy or both. Are your clients still in jail? They are not in jail, or at least I don't believe they are still in jail. You have three clients, is that right? Yes. After we entered that stipulation, one of my clients got re-incarcerated related to a parole violation. I believe he is out now, but as I mentioned in our reply brief, Your Honor, this is a case about sentence credits. As a result, the proper inquiry is not when the jail sentence ends, it's when the sentence ends. But more importantly, Your Honor... Can you get sentencing credits for non-jail time? That's what we are asking this court to provide, Your Honor, yes. How does that work? It would be a court order that reduces the sentence length by 30 days, and the reason why that's important, even after the jail term has completed, even after the sentence has ended, is because it affects the plaintiff's collateral rights under state law. Your Honors, under Tennessee law, expungements are generally available for non-violent convictions, but they are not available until five years after the end of the completion of the sentence. Who would the injunction be against? The injunction would be against the continued disbursement of sentencing... But who would it be against? It would be against... That's a subject matter you just described. Who would it be against? The simplest injunction is against the sheriff, preventing him from continuing to disburse sentencing credits. Well, he's not doing that, but I mean, he never did that, did he? The sheriff has argued that he is obligated to follow the orders that were instituted by Judge Benningfield. We have asked this court to declare those orders to be unconstitutional, and I'm asking this court to enjoin the sheriff from complying with this constitutionally tortious order that distributes sentencing credits, both in violation of... You want us to enjoin him to tell him to follow the laws now written up by the statute? I would like this court to declare the program unconstitutional and enjoin the sheriff from continuing to follow this unconstitutional order. I see that my time is... I just have one very quick question, if you would. I think your answer to Judge Moore's question is that all three of the plaintiffs have been released from jail. One apparently re-offended in some fashion, violated supervised release and is back in jail. But are they also under, at least as to the other two, or even all three, are they under supervised release in any way? Two of the three are under supervised release, Your Honor, yes. Okay. And how would the sentencing credit help them? In two separate ways, Your Honor. First, it would reduce by 30 days the period of time in which they are under state control. But secondly, it would accelerate the time period... Why would it reduce? Just because they would have started sooner? Supervised release would have started 30 days sooner? That's correct, Your Honor. Whether it started sooner or take 30 days off the back end, either way, the result is the same. And what's the other? There's a second. The second is that under Tennessee state law, expungement for nonviolent convictions, which is what we have here, is presumptively available five years after the sentence termination date. As a result, if you can move that sentence termination date up by 30 days, you can get your record expunged 30 days early. That is a concrete, tangible benefit that will continue to be important to the plaintiffs regardless of when their jail terms or their sentences end as a result. Do they otherwise qualify for expungement? Yes, Your Honor. I believe so. I don't believe that's contested either, but yes. Okay. You will have your full four minutes. Thank you. Good afternoon, Your Honors, and may it please the Court. My name is Michael Schmidt. I'm here on behalf of Judge Sam Beddingfield and Audie Shoup, the prior sheriff of White County, Tennessee. The program that is being challenged started with the Tennessee Department of Health, a state institution that offered free educational programs to these inmates. One of those educational programs taught the inmates the dangers of neonatal absence syndrome. As a result of going through that program, the Department of Health offered free Nexplanon implants for females and free vasectomies for males for those that wanted to go forward with that. The judge thought that was an excellent idea and as an incentive, offered 30 days off of a sentence credit to those individuals that went through the program and ultimately received that. The judge was publicly reprimanded by the Board of Judiciary and now admits that it could be unduly coercive to some individuals when you hang the keys of the jail in front of them. As far as the three plaintiffs, this standing order spawned a total of five lawsuits. Two of them are currently pending before this Court. This one and then there is a female plaintiff lawsuit where my officers have filed or raised an appeal of qualified immunity or denial of qualified immunity. All those cases have now been resolved and this is the last case that has spawned from the standing order. What happened in the qualified immunity case? Has that been resolved by the Sixth Circuit? No, it was privately settled. There was an all-male class action that was dismissed and that was not appealed and then there were two all-female cases and those were resolved. The three males in this case, initially it was Mr. Sullivan that filed suit in this case. He was serving a sentence out of the criminal court in White County and that is important because the standing order issued by Judge Banningfield, who was a General Sessions judge in White County, limited the standing order to those individuals over whom he had jurisdiction which were individuals serving a sentence issued by the General Sessions Court. Mr. Sullivan appeared at the White County Jail three days before the standing order was rescinded. He wasn't sentenced until one day after this complaint was filed. Mr. Gentry was also sentenced by the Circuit Court and Mr. Haskell was the only of the three that was sentenced by the General Sessions Court. So, at least for two of these individuals, there is concern of what effect an injunction on a General Sessions judge would have. I would also suggest that an injunction on a sheriff, I think if the facts develop in this case, the sheriff has no control over when an inmate is or is not released. He has to follow a judge's order and the judge's order is when inmates are released and the sheriff follows those judge's orders. So, as to this, I think it maybe was the third order and you'll have to correct me if I'm wrong. As I recall, that order still gives a sentencing credit of 30 days to those inmates who opted to have a vasectomy, maybe as to women as well, and ended up not having one or chose not to. They get the benefit, I guess, because they indicated an interest or willingness to have the vasectomy. And so, that in part is the differential treatment as I understand the claim that the three plaintiffs here are being treated differently from those who are going to get a sentencing credit just because they opted in, so to speak. So, to answer your first question, the third order was a clarifying order that clarified the order that allegedly rescinded this whole program. We wanted to make sure that everyone understood there was bookends in place. The program started when the standing order was entered and the program entered when the order rescinding the standing order was entered. Does that category of inmates still receive a 30-day credit? The ones who opted but did not get a vasectomy? Anybody who was serving a sentence under the General Sessions Court who agreed to get either the Nexplodon implant or the vasectomy would have received a 30-day sentence credit. And that was what was stated in the order rescinding the standing order and then that was what was intended to be clarified in the order clarifying. Do we know whether all of those people have received these credits? Are they ongoing? Is the record clear at all? The record is not clear on that. I spoke with the judge a couple of weeks ago and he told me that he hasn't had anybody in a couple of months come by to ask for any sort of sentence credit. From how I understood it worked, it's not like someone goes and asks for a sentence credit. At the time it happened, you got the sentence credit. So there's no more sentence credits being handed out. The time what happened? Sorry. The order came out? At the time, in between the two orders when there was this live program, if I was an inmate and I raised my hand and I said I would like a vasectomy, here's your sentence credit. Even before the person got a vasectomy? Well, I guess no male got a vasectomy. Oh, so there are no actual men who got vasectomies pursuant to the judge's program? That is correct. How many people signed up to have a vasectomy but did not get one? For men, I believe the number was under five. The record-keeping isn't excellent. For females, the nexplanon implants, there were, I believe, around 40 who actually got the implant. And there may be a give or take of a couple of individuals there. And so when the complaint was filed in this case, my clients have argued the plaintiffs lacked standing. And we have two issues here. We have standing and mootness. And the primary reason at the time of filing this complaint was there was no injury in fact. There was no concern there was some sort of possible future or imminent injury coming down the line. These gentlemen's lives were not changed in any way, shape, or form by the entry of any of these three orders other than they saw other people get a sentence credit. Now, those sentence credits were not issued on the basis of sex or on the basis of exercise of a fundamental right such that. They were given to the women who had the implant, right? Correct. So the women were giving up their asserted constitutional right to procreate. Correct. But this does not rise to a level of an equal protection claim because there was no disparate treatment. The women were not treated differently than the men. So basically, the same offer was handed down to everybody. All inmates under the General Sessions jurisdiction, here is your same offer. Well, the offer was different between men and women in that usually vasectomies are considered fairly permanent. They may be able to be reversed, but they would seem superficially, you can tell me I'm wrong, they would seem superficially to be different than an implant that I would presume can be taken out. That is correct. The way the process was administered was different for females and males. If discovery would have gone forward in this case, it would have shown that Judge Benningfield required 30 days of waiting for men before they got the vasectomy to make sure that what they were doing was in their best interest. Basically, he didn't want somebody agreeing. He wanted them to have a couple of nights to sleep on that. That is probably what explains why there were less men that received than the females. At the time the complaint was filed, the order had already been rescinded. Let me back up a little bit. This would be a little bit different if there was a claim for damages in this case,  When we're looking at the complaint at the time it was filed, the order had already been rescinded. Importantly, along with that, the reason it had been rescinded is because the Department of Health, a separate entity, a state agency, said we are no longer going to offer any of these services if they are connected in any way, shape, or form to a sentence credit. The Department of Health basically was distinguished itself from White County. This isn't an instance in which the defendant ceased his alleged unlawful conduct in order to avoid some sort of ruling from a court. The state agency, the vehicle through which this could have happened, initiated this whole process by saying we're out, we're no longer involved in this. Were there people, either males or females, who got sentencing credits? Yes. Isn't the theory of these three plaintiffs that they are denied sentencing credits because they refused to give up their right to procreate, which is a fundamental right? Why isn't that something that could be a continuing violation that could be cured by an injunction? I think there's a difference between putting an impediment to access a fundamental right and offering a motivation to take a different route. For example, their state funding of abortion. There's been decisions through, I forget if it's Medicare, but they've decided that they were going to fund only medically necessary abortions and not abortions that were by choice. The Supreme Court, and I'm sorry I don't have the site of this case, I can provide it to the court, basically said when you put a barrier and said you cannot access, that's one thing. Using funding to encourage people's conduct is another. In this case, these gentlemen all exercised their fundamental right. There was no burden. There was no barrier. We did not stop them in any way, shape, or form. There was an encouragement for those that thought it was in their best interest to receive this free medical health care from the Department of Health for whatever reasons in their lives. A lot of them are addicted to drugs. A lot of them, if they have unwanted children, the judge was talking about seeing these families come time and time again before him, and he was really trying to do something that was well. No good deed goes unpunished. I didn't consider that a good deed. Sorry. No intended good deed, I guess. If at the time the complaint was filed, the order was rescinded, the Department of Health is not going to do this anymore, if that's not sufficient for standing, then when Tennessee came down with the statute making it illegal, and the individuals were released from incarceration, the idea that there's going to be some sort of continuing harm at this case, other than they didn't get a sentence credit, is not present. Now, the idea that maybe this sentence credit, I think in the brief he said, length of sentence affects employment opportunities, or length of sentence affects your ability being under some sort of court supervision, or my ability to go get my cases expunged. First, the one gentleman that was mentioned as far as being under eight-year supervision, he's under the circuit court jurisdiction. He's not under the jurisdiction of the General Sessions Court. What difference does that make? Are you saying that he should never have been given a sentence credit, because he was never under the jurisdiction of the Sessions Court? He never did get a sentence credit. I know that, because all three say that. He was not encompassed by the standing order, because the General Sessions judge did not have the ability to give a sentencing credit to this individual. You're saying he's not a proper plaintiff. That's exactly what I'm saying. Which one is that? That is Sullivan, and Gentry is also out of the circuit court. Both of them were actually sentenced on August 25th, 2017, which is one day after the standing order was rescinded. And so, if at the time there is a question... So they are sentenced, and I don't know the intricacies of Tennessee law, they are sentenced by the circuit court, then, you're saying, as opposed to the General Sessions Court? Both of them have sentencing, the ability to sentence. General Sessions typically does misdemeanors, does 1129s. Circuit court can also do that. Who sentenced them? The circuit court. The circuit court, and they were sentenced the day after the first order was rescinded. Yes. So you're saying neither Gentry nor Sullivan qualify. Correct. And in fact, when this case was originally filed, Mr. Sullivan was the sole plaintiff. I filed a motion to dismiss saying, he's circuit court, this order doesn't even apply to him, how can he claim injury from an order that doesn't apply to him? And the judge couldn't exercise his jurisdiction over him. There was an amended complaint added the other two plaintiffs in this case, and of those two plaintiffs, only one was out of the General Sessions Court. And so I would ask, I see my time is up, I would ask the court to find that this case, the court lacked jurisdiction because there was no standing order. So the other individual is named who? Haskell. Haskell. And so why would relief for Haskell not be appropriate in terms of giving him a 30-day sentencing credit? I believe that if you're looking at the equitable relief that the court has the ability to provide, what the court is doing in that case is saying, just because the court entered, the General Sessions Court entered this order, everybody that was in the jail now gets a sentencing credit. Because effectively, any individual that saw someone else, that refused to give up their fundamental right in order to get out 30 days earlier, everybody in that jail is going to get a 30-day sentence credit. If they file a timely lawsuit. If they file a timely lawsuit, correct. And there is a question. If somebody deserves relief, then the fact that it's going to be given broadly is a good thing. That is correct. Why shouldn't he get the relief that we're hypothesizing of a 30-day sentence? Because he was not injured. There was no injury. In fact, there was no threatened injury in the relief. So the differential in treatment is not a cognizable injury. He was not in the same class of individuals that was granted the 30-day sentence credit, so you don't have that identity of parties that were treated differently. Thank you, Counselor. Judge Moore, I'd like to address that dialogue that you had about the plaintiffs themselves up front. We know that this order applied to plaintiffs or to criminal defendants in the circuit court because Plaintiff Gentry signed up to receive the vasectomy before he was sentenced by the circuit court. That's how we know that this was applied much more broadly than just General Sessions defendants. But more than that, in Tennessee, all three of these plaintiffs, just like all other criminal defendants, came before Judge Benningfield before ultimately some of their cases were sentenced by the circuit court. I think there's certainly no evidence in the record that this order did not apply to the additional plaintiffs here, and I think the record is quite clear that it did, including, in particular, Plaintiff Gentry, who signed up for this vasectomy program. I also want to note and emphasize there is no evidence in this record whatsoever that all of these other potential plaintiffs or people eligible for the sentencing credit that is still being handed out have, in fact, received it yet, that this is exhausted. There's none. They had an opportunity to prove that an injunction wasn't necessary here. There's no evidence in the record to support this claim, this statement about five vasectomy defendants and several dozen Nexplanon implant plaintiffs that have already received their credit. This is the first I've heard of this because it is simply not in the record. With respect to an injunction, I also just want to emphasize the reason why this order was partially rescinded. As opposing counsel mentioned, it was rescinded because the State of Tennessee Department of Health indicated through its representatives that it will no longer issue or offer free sterilization, not because there's been any acknowledgment from the defendants that this program is constitutionally problematic, not because there's been any acknowledgment that it is unlawful or that there's any legal problem with it statutorily or otherwise whatsoever. Simply, a third party has said we're no longer providing free sterilization. Are they not providing free sterilization to any inmates then at all, or are there some other aspects to that? I'm simply reading from the order rescinding previous standing order. It's page ID 147. It's document 13-2. This is the justification provided by Defendant Benningfield as to why this order was partially rescinded. It starts, whereas the State of Tennessee Department of Health has indicated to the court through its representatives that it will no longer offer free mastectomies to white county inmates serving a sentence for the General Sessions Court and will not provide the free Nexplanon implant to white county inmates serving a sentence for the General Sessions Court. It is hereby ordered the previous order in this regard is hereby rescinded. That's not because there's been any acknowledgment of some underlying illegality here. And to the extent that they're saying there is no chance that this program will return, I think that matters. Do you really want as injunctive relief to take away the 30-day credits that have been given? That is a determination that we leave up to the Article III judges here. There are two possible remedies available. We have asked for either one or both. That is certainly a potential equal protection remedy. It is one that this court is empowered to provide. Your Honor, I just want to note one last thing before my time runs out. As noted, one might be able to dispute what qualifies as an incentive or a burden. But in this case, we have a judge who was publicly reprimanded and in an agreed order states that you now realize that this order could unduly coerce inmates into undergoing a surgical procedure which would cause at least a temporary sterilization and was therefore improper. We've argued that he's estopped by that admission. We had an extended section in our briefing about it to which there was no response whatsoever in the Apeliz brief. We believe he's estopped from questioning the legality of this program and we believe that the district court's order should be reversed. Okay. Thank you, counsel, both of you for your arguments today. We very much appreciate them. The case will be submitted and you may call the next case.